[No. B163347. Second Dist., Div. One. Apr. 29, 2004.]

GUARDIAN ANGEL POLISH NATIONAL CATHOLIC CHURCH OF LOS ANGELES, INC., Plaintiff, Cross-defendant and Respondent, v. CASIMIR J. GROTNIK et al., Defendants, Cross-complainants and Appellants.

## COUNSEL

McKay, Byrne & Graham and Paul A. de Lorimier for Defendants, Cross-complainants and Appellants.

MacCarley & Rosen and Mark MacCarley for Plaintiff, Cross-defendant and Respondent.

## OPINION

**SPENCER, P. J.—**

### INTRODUCTION

Defendants Casimir Grotnik and Polish National Catholic Church appeal from a judgment entered in favor of plaintiff Guardian Angel Polish National Catholic Church of Los Angeles, Inc. (Guardian Angel parish) after the trial court found that real property consisting of a church and hall and all personal property located therein belong to Guardian Angel parish, and denying relief on defendants' cross-complaint.

### BACKGROUND

The Polish National Catholic Church is and always has been a hierarchical church. The laws of the Polish National Catholic Church are drafted and passed at General Synods, after which they are binding on all parishes within the church.

On January 20, 1960, four Polish-American individuals incorporated Guardian Angel parish in Los Angeles. According to the Polish National Catholic Church Constitution in effect at the time, a parish "is a collective legal unit within the realm of the Polish National Catholic Church possessing a charter or recognition of the Bishop Ordinary of the diocese in whose territory the parish is located, confirmed by the Prime Bishop and organized according to the Constitution, principles, laws and rules of the Polish National Catholic Church." (1958 Polish Nat. Catholic Church Const.,

art. III, § 1.) A parish is "organized and accepted under the jurisdiction of the Polish National Catholic Church and subscribes to, and is bound by all provisions of the Constitution, laws, rules, regulations, customs and usages of the Polish National Catholic Church which are in force at the time of its organization or acceptance and/or which may hereafter be adopted by the General Synods of the Polish National Catholic Church." (*Id.*, § 2, par. 1.)[1]

The articles of incorporation state that "the primary purposes for which this corporation is formed are: [¶] (a) To worship God; [¶] (b) To believe in, and to disseminate religious principles proclaimed by Jesus Christ, the Apostles and their successors; [¶] (c) Realization of these truths in the life of the individual, of the family, and of the community; [¶] (d) The ecclesiastical or religious affairs of the Church (Congregation) will be conducted in accordance with rules and regulations of a diocesan bishop of the Polish National Catholic Church and his rightfully elected successor, who is in union with the Prime Bishop of the Polish National Catholic Church of Scranton, Pennsylvania, the most Reverend Leon Grochowski, or with his duly elected successor. [¶] "(e) This Church (Congregation) is a democratic body. This means, that in matters of economics and of a social nature, it is subject to the control of those who constitute the organization and who will conduct only their ecclesiastical and religious affairs, consistent with California law, in accordance with the by-laws and rules of the Polish National Catholic Church."

The declaration of economic and social independence in the Articles of Incorporation is not inconsistent with the 1958 Constitution of the Polish National Catholic Church, which states that "[i]n matters of administration, management and social welfare the Polish National Catholic Church derives its authority directly from the people who build, create, believe in, support and care for it. It is a fundamental principle of the Polish National Catholic Church that the real property and all the assets of any parish are the property of those people who build, support and conform to the laws of the Polish National Catholic Church and who are in union with the parish and the diocese. [¶] The administration and control over the property of the parish belongs to the parish committee which is elected by the parish . . . ." (1958 Polish Nat. Catholic Church Const., art. IV, par. 3.)

In other words, authority within the Polish National Catholic Church is divided between the religious and the temporal. While temporal authority

---

[1] The Constitution now in effect, and to which a parish of the Polish National Catholic Church was subject in 2000, describes a parish as "an association, either incorporated or otherwise, within the realm of this Church, organized according to the Rite, Constitution, Principles, Laws, Rules, Regulations, Customs and Usages of this Church, possessing a Warrant from the Diocesan Bishop of the Diocese in whose territory the Parish is located, and confirmed by the Prime Bishop."

rests with parish members, as noted above, religious authority, or "faith, morals and discipline," rests solely "in the hands of the Bishops and the clergy united with them." (1958 Polish Nat. Catholic Church Const., art. IV, par. 2.)[2] The articles of incorporation recognize this division of authority.

On August 28, 1963, after Father Edward Kalata assumed the duties of parish priest, the members of Guardian Angel parish purchased real property at 1118 North Commonwealth Avenue in Los Angeles. Guardian Angel Polish National Catholic Church took title to the property. The Prime Bishop dedicated the building as a Polish National Catholic church.

It was not until 1998 that the Polish National Catholic Church informed Guardian Angel parish that its articles of incorporation did not conform in all respects to the Polish National Catholic Church Constitution, a new version of which had been adopted in that year. On December 6, 1998, at a special meeting of the parish board of directors, the board voted to amend the articles of incorporation to conform to the new constitution.

The physical property of a Polish National Catholic Church parish belongs to members of the parish "who conform to the provisions of the constitution, laws, rules, regulations, customs and usages of the Polish National Catholic Church." (1958 Polish Nat. Catholic Church Const., art. III, § 2, par. 2.)[3] A parish may not be liquidated "without the written permission of the Prime Bishop and the Supreme Council." (*Id.*, par. 4.)[4] Moreover, "[i]n the event of either complete liquidation of a parish, or change of title of the property ownership, all property moveable and immoveable becomes the property of Polish National Catholic Church." (*Id.*, par. 5.)[5]

Guardian Angel parish's articles of incorporation do not conform entirely to these provisions of the Polish National Catholic Church Constitution. The articles state that "[i]n the event of the dissolution[or] liquidation . . . of this corporation . . . , none of the property or assets of this corporation shall at such time inure to the benefit of, become the property of, or be payable to any of the members of this corporation. Any property or assets belonging to this corporation at such time shall be transferred, set over, assigned or donated to any other non-profit organization operated exclusively for religious purposes, as may be selected by the board of directors of this

---

[2] See also 1998 Polish National Catholic Church Constitution, article VI, section 2.

[3] See also 1998 Polish National Catholic Church Constitution, article V, section 8.

[4] See also 1998 Polish National Catholic Church Constitution, article V, section 9.

[5] See also 1998 Polish National Catholic Church Constitution, article V, section 10: "When a Parish is liquidated, expelled, ceases to exist, its Warrant lawfully revoked, or title to its Parish property is unlawfully transferred, then all of its legally acquired or accumulated funds, moneys and property, whether real or personal, shall revert to the Diocese in which any of the aforesaid events take place . . . ."

corporation [so that] the property and assets then owned by the corporation shall be devoted to carrying on the function and purposes of religious purposes . . . ." (Arts. of Incorp., par. 8.)

The bylaws that Guardian Angel parish adopted on November 18, 1963, brought the parish's governance into closer conformity with the national constitution, however. Article V of the bylaws specifies that "[a]ny liquidation of the assets of this corporation shall conform to the various provisions of the Articles of Incorporation of this corporation" (bylaws, § 1); "[n]o parish can be liquidated without the written permission of the Prime Bishop and the Supreme Church Council" (*id.*, § 2); and "[i]n the event of the complete liquidation of a parish, or the change of title of property ownership, all property moveable and immoveable becomes the property of the Polish National Catholic Church" (*id.*, § 3).

With respect to membership, the bylaws also reflect Guardian Angel parish's close connection with the Polish National Catholic Church. The 1958 national constitution states in Article III that "[a] believer of the Polish National Catholic Church is one who professes the principles of this church and acknowledges them as the norms and rules of his life." (Par. 1.) It also states that "[a] member of the Polish National Catholic Church may be a believer of this Church who unites himself with others in a visible society, called a parish, and contributes with his offerings, labor and life, to fulfill the goals of the particular parish and the whole Church." (Par. 2.) Finally, "[a] member of a parish may be anyone who enrolls and obligates himself to fulfill all of the duties defined in this Constitution." (Par. 6.)[6]

The Guardian Angel parish bylaws state in article III that "[t]his church shall be comprised of members of The Guardian Angel Polish National Catholic Church of Los Angeles and of the Polish National Catholic Church." (§ 1.) Moreover, "[a] member is one who professes the principles of this church and acknowledges them as the norms and rules of his life and as a believer of the Polish National Catholic Church." (§ 2.) In addition, "[a] member is one who unites himself with others in a visible society called a parish, and contributes with his offerings, labor and life, to fulfill the goals of this particular parish and the whole Church." (§ 3.) Finally, "[a] member has the duty to fulfill the purposes as set forth in Article II of the Articles of Incorporation of this corporation which are also set forth in the Constitution and Statute of the Polish National Church." (§ 4.)

Guardian Angel parish's articles of incorporation place governance of the parish in the hands of the parish as a whole and of the board of directors. The

---

[6] See also 1998 Polish National Catholic Church Constitution, article IV, paragraphs 1 and 2.

articles of incorporation provide that "the authorized number and qualifications of the trustees (directors) and members of this corporation shall be such as shall be set forth in the By-laws of the corporation . . . together with the respective voting and other rights and privileges of each class of said membership are to be set forth and provisions made therefore in the By-laws of this corporation and the By-laws are to set forth and make provision for the election and/or appointment and the term of office of the Trustees."

█ With respect to religious corporations, the term "bylaws" "means the code or codes of rules used, adopted, or recognized for the regulation or management of the affairs of the corporation irrespective of the name or names by which such rules are designated." (Corp. Code, § 9150, subd. (a).) Inasmuch as Guardian Angel parish's articles of incorporation recognize the authority of the Polish National Catholic Church, that body's constitution, rules and regulations comprise part of Guardian Angel parish's bylaws. (*Korean United Presbyterian Church v. Presbytery of the Pacific* (1991) 230 Cal.App.3d 480, 503–504 [281 Cal.Rptr. 396].)

The bylaws adopted on November 18, 1963 by Guardian Angel parish's board of directors acknowledge this. The bylaws state that the board of directors is the body "referred to in the National Constitution as the Parish Committee." (Bylaws, art. IV, § 1.)

According to the 1958 national constitution, "The administration and control over the property of the parish belongs to the parish committee which is elected by the parish, confirmed by the Diocesan Bishop and strictly dependent upon and answerable to the lawful church authorities. [¶] The parish committee's powers and duties are subject to the Constitution, laws, rules, and regulations of the Polish National Catholic Church and the rules and regulations of the local parish." (1958 Polish Nat. Catholic Church Const., art. IV, paragraph 3.)

The parish committee is "the managing body" of the parish, "elected by the parish, approved by the Diocesan Bishop, and responsible to the parish and the Bishop." (1958 Polish Nat. Catholic Church Const., art. XVIII, paragraph 1.)[7] Only those who have been members of the Polish National Catholic Church for at least one year may be elected to parish office. (*Id.*, art. II, paragraph 13.) Confirmation of the members of elected parish committees is one of the duties of a diocesan bishop. (*Id.*, art. X, paragraph 12.) A parish committee has no authority to act as such until the diocesan bishop approves its membership.

From the inception of Guardian Angel parish to 2000, the parish annually sent information regarding its finances to the Polish National Catholic

---

[7] See also 1998 Polish National Catholic Church Constitution, article IX, paragraph 12.

Church's headquarters in Scranton, Pennsylvania. The constitution of the Polish National Catholic Church guided administration of the parish throughout that period. The parish purchased copies of the constitution at some point after 1963 and gave one to each parishioner. On the 10th anniversary of Guardian Angel parish's incorporation, the parish expressly acknowledged "its ties with the rest of the Church." Moreover, during each of those years, the board of directors prepared a parish committee confirmation form following the election of a new Board and forwarded it to the bishop for approval and received written approval.

Father Kalata, who had served the parish since 1963, retired in 1998. In August 1998, the diocesan bishop, Anthony Rysz, appointed Father Joseph L. Milewski to serve as Father Kalata's replacement. When Casimir Grotnik became the diocesan bishop in 1999, he requested that Father Milewski provide him with certain financial information concerning the operation of Guardian Angel parish. Father Milewski failed to provide this information, after which Bishop Grotnik removed him and appointed Father John Druther as his replacement, as was Bishop Grotnik's prerogative. (1998 Polish Nat. Catholic Church Const., art. IX, § 2.)

The board of directors elected in December 1999 to serve as the 2000 parish committee did not submit a parish committee confirmation form to the diocesan bishop. He never approved its election.

The unapproved board voted on September 21, 2000, to sever all ties with the Polish National Catholic Church. It refused to recognize the removal of Father Milewski and refused to accept his replacement. The unapproved board resolved to terminate any further use or occupancy of Guardian Angel parish's real property by any agent, servant, employee, representative or contractor of the Polish National Catholic Church. It further resolved to undertake legal proceedings to evict and remove any such agent, et cetera, from its real property and to enjoin by any legal means any trespass by such agents, et cetera. It also amended the articles of incorporation to change the corporation's name from Guardian Angel Polish National Catholic Church to Guardian Angel Parish of Los Angeles. Finally, the unapproved board voted to repeal those portions of the bylaws that governed liquidation of a parish.

Sometime after September 21, 2000, Guardian Angel parish hired security guards to keep parishioners who remained members of the Polish National Catholic Church from entering the parish church and has refused donations tendered by those members. In 2001, Bishop Grotnik approved a parish committee elected by parishioners who remained members of the Polish National Catholic Church.

## CONTENTIONS

Defendants contend the trial court improperly ignored the legal significance of the 2000 board of directors' failure to obtain approval of their election from the diocesan bishop. We agree.

Defendants assert the trial court improperly applied neutral principles of law in finding that the property in question belongs solely to Guardian Angel parish. Again, we agree.

## DISCUSSION

*Legal Significance of 2000 Board of Directors' Failure to Obtain Diocesan Approval*

The fifth cause of action of defendants' cross-complaint asked the trial court to find that the 2000 board of directors' failure to obtain diocesan approval of the board's election made its actions unauthorized, thus putting the legal significance of the failure to obtain diocesan approval squarely before the trial court. It consequently erred in failing to decide the issue.

It is undisputed that the 2000 board of directors failed to obtain diocesan approval of its election. It is equally undisputed that the Polish National Catholic Church Constitution, in both the 1958 and 1998 versions, requires such approval before the board of directors, which sits as the parish committee, is authorized to act. It follows, then, that *all* acts of the purported 2000 board of directors were unauthorized and consequently a nullity. (Cf. *Westbrook v. Social Center Hall Assn. of Stockton* (1957) 148 Cal.App.2d 815, 817 [307 P.2d 640].) This conclusion entitles defendants to judgment in their favor on the fifth cause of action of their cross-complaint.

The parties thus are restored to the status quo ante and defendants are entitled to the declaration sought in the fifth cause of action of their cross-complaint. In short, Guardian Angel parish remains a parish of the Polish National Catholic Church whose members also must be members of the national church (1998 Polish Nat. Catholic Church Const., art. V, § 1; 1958 Polish Nat. Catholic Church Const., art. III, § 2, par. 1) and the physical property of which belongs to those members "who conform to the provisions of the constitution, laws, rules, regulations, customs and usages of the Polish National Catholic Church" (1998 Polish Nat. Catholic Church Const., art. V, § 8; 1958 Polish Nat. Catholic Church Const., art. III, § 2, par. 2). Inasmuch as plaintiff remains a parish of the Polish National Catholic Church, however, defendants are not entitled to seek recovery for trespass or to seek ejectment as pleaded in their first and third causes of action.

The 1998 Polish National Catholic Church Constitution obligates every member to pay annual general fund dues for diocesan administration and establishes various funds to which members are encouraged to make contributions. (Art. XXI, §§ 1–15.) It provides that "[a]ll moneys collected and received by a Parish Committee from the sources of income set forth in Section 3 of this Article XXI shall be paid over quarterly to its Diocesan Bishop." (*Id.*, § 16.) Every parish is obligated to "fulfill its financial obligations to the Diocese and to the General Church," and if it does not do so, it "will come under the direct management of the Diocesan Bishop." (*Id.*, art. V, § 11.) These provisions entitle defendants to an accounting of funds received and not reported or remitted to the diocesan bishop from the time the purported 2000 board of directors *qua* parish committee sought to sever its connection with the national church and to damages for the conversion of any personal property to uses other than those normally appropriate for a parish of the Polish National Catholic Church, as pleaded in the second and fourth causes of action of their cross-complaint.

*Resolution of Property Dispute*

The Polish National Catholic Church is and always has been a hierarchical church. The laws of the Polish National Catholic Church are drafted and passed at General Synods, after which they are binding on all parishes within the church.

From its inception until 2000, Guardian Angel parish unmistakably manifested its intent to be part of the Polish National Catholic Church. It included "Polish National Catholic Church" in its name. While the articles of incorporation do not conform to the national constitution, it is not clear that the incorporators had available a copy of the national constitution. It *is* clear, in contrast, by the time the parish adopted the bylaws in 1963, after Father Kalata's assignment to the parish, members of the board of directors had access to that document. The board of directors' adoption of bylaws that closely mirror provisions of the national church's constitution, requiring parish members to be members of the national church and requiring that they be members of the national church for at least one year before becoming eligible for election to the board of directors, which, the bylaws acknowledge, is the same body denominated a parish committee in the national constitution, evidences a clear intent to follow the national constitution and to be part of the national church. Finally, Guardian Angel parish annually submitted financial information to the national church's headquarters.

In short, the Constitution of the Polish National Catholic Church guided administration of the parish from its incorporation through 1999. The parish purchased copies of the Constitution and gave one to each parishioner. On the

10th anniversary of Guardian Angel parish's incorporation, the parish expressly acknowledged "its ties with the rest of the Church." Moreover, during each of those years, the board of directors prepared a parish committee confirmation form following the election of a new board and forwarded it to the bishop for approval and received written approval.

Stated otherwise, it is undisputed that for approximately 39 years following its incorporation, Guardian Angel parish was subject to and in union with the diocesan bishop of the Central Diocese of the Polish National Catholic Church, who has at all times been in union with the Prime Bishop of the Polish National Catholic Church of Scranton, Pennsylvania. It may be inferred, therefore, that Guardian Angel parish was recognized by the diocesan bishop and confirmed by the Prime Bishop. The national church's request in 1998 that Guardian Angel parish amend its articles of incorporation to conform fully with the newly enacted national constitution confirms that the parish was in good standing with the national church as of that date. Moreover, the 1998 parish committee's resolution to amend the articles as requested attests to the parish's connection to the national church.

The foregoing facts distinguish this case from *Presbytery of Riverside v. Community Church of Palm Springs* (1979) 89 Cal.App.3d 910 [152 Cal.Rptr. 854], upon which plaintiff relies heavily. In that case, the local church had been known for a number of years as the Community Church of Palm Springs, having no hierarchical affiliation. The church later affiliated with the Presbyterian Church, although it quickly discontinued the use of "Presbyterian" in its name, reverting to "Community Church of Palm Springs." Moreover, throughout its history, the church had extended membership to all Protestant denominations. The church described itself as interdenominational and nondenominational. (*Id.* at pp. 916–917.) These facts, which differ greatly from those applicable to Guardian Angel parish, supported a conclusion that the local church never agreed to hold property in trust for the Presbytery. (*Id..* at p. 932.) The case provides no support for a similar conclusion here, however.

In summary, Guardian Angel parish is bound by the constitution, laws, rules and regulations of the Polish National Catholic Church. Historically, it has accepted the authority of the national church and submitted itself to the national church's jurisdiction. The trial court erred in finding otherwise.

Although the trial court focused on the 1958 Polish National Catholic Church Constitution, in that it was in effect at the time of Guardian Angel parish's incorporation, the parish is equally bound by the 1998 Constitution. A parish "subscribes to, and is bound by all provisions of the Constitution, laws, rules, regulations, customs and usages of the Polish National Catholic

Church which are in force at the time of its organization or acceptance *and/or which may hereafter be adopted* by the General Synods of the Polish National Catholic Church." (1958 Polish Nat. Catholic Church Const., § 2, par. 1, italics added.) Again, the trial court erred in ruling otherwise.

In settling a church property dispute, such as that currently before us, courts must apply "neutral principles of law, developed for use in all property disputes, which can be applied without 'establishing' churches to which [the] property is awarded." (*Presbyterian Church v. Hull* (1969) 393 U.S. 440, 449 [21 L.Ed.2d 658, 89 S.Ct. 601].) In deciding the issue, courts generally consider "(1) the deeds to the property, (2) the articles of incorporation of the local church, (3) the constitution, canons, and rules of the general church, and (4) relevant state statutes, if any, governing possession and disposition of such property." (*Protestant Episcopal Church v. Barker* (1981) 115 Cal.App.3d 599, 621 [171 Cal.Rptr. 541].) Provisions found in the general church's constitution "can override any right the majority of a local congregation might otherwise have to control the local church property." (*Metropolitan Philip v. Steiger* (2000) 82 Cal.App.4th 923, 931 [98 Cal.Rptr.2d 605].)

The physical property of a Polish National Catholic Church parish belongs to members of the parish "*who conform to the provisions of the constitution, laws, rules, regulations, customs and usages of the Polish National Catholic Church.*" (1998 Polish Nat. Catholic Church Const., art. V, § 8; 1958 Polish Nat. Catholic Church Const., art. III, § 2, par. 2, italics added.) A parish may not be liquidated or dissolved "without the written permission of the Prime Bishop and the Supreme Council." (*Id.*, art. V, § 9.) "When a Parish is liquidated, expelled, ceases to exist, its Warrant lawfully revoked, or title to its Parish property is unlawfully transferred, then all of its legally acquired or accumulated funds, moneys and property, whether real or personal, shall revert to the Diocese in which any of the aforesaid events take place . . . ." (*Id.*, § 10.)

When the unapproved 2000 board voted on September 21, 2000, to sever all ties with the Polish National Catholic Church, the effect of its action was to dissolve Guardian Angel parish as a parish of the Polish National Catholic Church, reconstituting it as a separate church known as Guardian Angel Parish of Los Angeles. The board's resolution to terminate any further use or occupancy of Guardian Angel parish's real property by any agent, servant, employee, representative or contractor of the Polish National Catholic Church was an attempt to expropriate that property for the use of those corporate members who were separating themselves from the Polish National Catholic Church. At that point, the unapproved 2000 board and parish members loyal to the board no longer "conform[ed] to the provisions of the constitution, laws, rules, regulations, customs and usages of the Polish National Catholic

Church." (1998 Polish Nat. Catholic Church Const., art. V, § 8; 1958 Polish Nat. Catholic Church Const., art. III, § 2, par. 2.) The parish property therefore no longer belonged to them. (*Ibid.*)

The unapproved 2000 board's action also contravened the intent of the parish when it purchased the parish property. The bylaws adopted a few months after the purchase provide that any liquidation of the parish "shall conform to the Articles of Incorporation." (Bylaws, § 1.) Those articles require that "[a]ny property or assets belonging to this corporation at such time shall be transferred, set over, assigned or donated to any other non-profit organization operated exclusively for religious purposes, as may be selected by the board of directors of this corporation." (Arts. of Incorp., par. 8.) In adopting the bylaws, the 1963 board made an election. At that time, the bylaws, in conformity with the 1958 Polish National Catholic Church Constitution, stated that "[n]o parish can be liquidated without the written permission of the Prime Bishop and the Supreme Church Council," upon which liquidation "all property moveable and immoveable becomes the property of the Polish National Catholic Church." (Bylaws, §§ 2, 3.)

In summary, the 1958 and 1998 constitutions of the Polish National Catholic Church, as well as the articles of incorporation of Guardian Angel parish, read in tandem with the bylaws adopted in 1963, state two governing principles. First, the local parish owns parish property only so long as the parish conforms to the constitution, laws, rules and regulations of the national church. Second, property held by a local parish reverts to the national church when the parish dissolves or liquidates. California law presumes "a trust . . . in religious assets 'to the extent that, the articles or bylaws of the corporation, or the governing instruments of a superior religious body or general church *of* which the corporation is a member, so expressly provides.' " (*Korean United Presbyterian Church v. Presbytery of the Pacific*, *supra*, 230 Cal.App.3d at p. 508, quoting from Corp. Code, § 9142, subd. (c)(2).) In this case, both the governing constitution of the general church and articles and the 1963 bylaws of the corporation provide for such a trust. The trial court erred in failing to recognize this.

Plaintiff's argument that California law precludes application of the express trust presumption in this case because Guardian Angel parish's articles of incorporation do not state expressly that in the event of dissolution, its assets shall be distributed to the national church (Corp. Code, § 9132, subd. (a)) is misguided. Corporations Code section 9132, subdivision (a), does not apply to Guardian Angel's 1960 articles of incorporation unless and until those articles are amended to so provide. (*Id.*, § 9913, subd. (c).) There is no evidence that the articles ever were so amended. The presumption of express trust therefore applies, based on the content of the national constitution and Guardian Angel parish's articles and 1963 bylaws.

The judgment is reversed and the trial court is directed to enter a new and different judgment in favor of defendants on the fifth cause of action of the cross-complaint. The trial court is further directed to try the second cause of action (conversion) and fourth cause of action (accounting) of the cross-complaint. Defendants are to recover costs on appeal.

Ortega, J., and Mallano, J., concurred.