[No. G040427. Fourth Dist., Div. Three. Oct. 28, 2009.]

RONALD PRESTA, Individually and as Trustee, etc., Plaintiff and Respondent, v.
RENEE TEPPER, Individually and as Trustee, etc., Defendant and Appellant.

**COUNSEL**

Law Office of William J. Kopeny & Associates and William J. Kopeny for Defendant and Appellant.

Donna Bader; Law Offices of Michael C. Hewitt and Michael C. Hewitt for Plaintiff and Respondent.

**OPINION**

**BEDSWORTH, Acting P. J.**—Two men enter into a real estate investment partnership, each acting in his capacity as trustee of a family trust. The question is: who are the "partners," the men, or the trusts? The answer is "the men." A trust of the type formed by both men in this case is simply a fiduciary relationship, governed by the Probate Code, by which one person or entity owns and controls property for the benefit of another. Such a trust is not an entity separate from its trustee, and cannot independently *do* anything—it cannot sue or be sued; it cannot enter into agreements; and it cannot fulfill the fiduciary duties of a partner. Consequently, we agree with the conclusion of the trial court in this case, that the provision of the partnership agreement which required that upon the death of a "partner," the partnership shall purchase his interest in the partnership, was triggered by the death of one of the two men. We affirm its judgment.[1]

---

[1] Respondent has filed a request for judicial notice of two documents: (1) petition for order approving modification of trust terms, and (2) first supplement to petition for order approving modification of trust terms. That request is denied.

## FACTS

Robert Tepper and Ronald Presta invested in real estate together. They entered into three different partnership contracts, in 1986, 1993, and 1995, each one governing their investment in a separate described property. Tepper and Presta each entered into the 1986 contract in their individual capacities. However, they agreed to enter into both the 1993 and 1995 contracts in their capacities as trustees of their respective trusts.[2] All three of the agreements had identical provisions requiring that upon the "death of a Partner, the Partnership shall purchase . . . the entire Partnership interest of the deceased Partner in the Partnership . . . ."

After Tepper died, his widow, appellant Renee Tepper, agreed to sell his interest in the 1986 partnership in accordance with the "death of a partner" provision, but refused, in her capacity as successor trustee of the two trusts on whose behalf Tepper had entered into the 1993 and 1995 partnership agreements, to sell the interests in those partnerships. Renee[3] took the position that it was the trusts, rather than the individuals, who were the "partners" in those latter agreements; and since there had been no "death" of a trust partner, she could not be compelled to sell either of the trusts' interests in its respective partnership.

Presta disagreed with Renee's interpretation and sued for declaratory relief. The trial court, after considering the language of the partnership agreements—which it considered to be ambiguous—as well as extrinsic evidence offered by the parties, concluded that the "death of a partner" provision referred to the death of either of the two individual men, and entered a judgment declaring that Renee was obligated to sell the trusts' interests in the two partnerships to Presta.

## DISCUSSION

Each of the two partnership agreements at issue herein begins with the following language: "This partnership agreement is made and entered into as

[2] Presta entered into both the 1993 and the 1995 partnership agreements in his capacity as trustee of "The Ron E. Presta Revocable Trust u/d/t October 30, 1990." Tepper entered into the 1993 agreement in his capacity as trustee for "The C.A.L. Trust of 1990 u/d/t March 8, 1990," and the 1995 agreement in his capacity as trustee for "The Tepper Family Trust of 1982 u/d/t December 10, 1982."

[3] We refer to appellant Renee Tepper by her first name not out of disrespect but for clarity, as she shares a surname with her late husband. While Ronald Tepper is not a party to the litigation, he played a key role in the facts giving rise to the litigation, and as a consequence plays a key role in our discussion of those facts.

of [date], by and among Ronald E. Presta as Trustee for The Ron E. Presta Revocable Trust u/d/t October 30, 1990 ('Presta') and Robert M. Tepper ('Tepper') as Trustee for [his trust.[4]]" The parties are sometimes hereinafter individually referred to as "Partner" and collectively referred to as "Partners."

It is undisputed that Tepper and Presta devised this language by taking their first partnership agreement, which they had entered into as individuals in 1986, and altering it so that each entered into the agreement in their capacities as trustees of their respective trusts. Renee contends that this alteration demonstrates unequivocally that Tepper and Presta intended that their respective trusts, as opposed to they as individuals, would be the "partners" in both the 1993 and 1995 agreements. Thus, her core assertion is that "[i]n this case, the parties to the contract at issue were two trusts, which were *the fictional entities* created by the two men who had previously been partners in real estate development." (Italics added.)

We cannot say what Tepper's and Presta's subjective intentions may have been, but we have no trouble concluding, as a matter of law, that it was they, and not their respective "trusts," who were the partners in the two agreements at issue herein.

The fundamental flaw in Renee's argument is that it assumes a trust is an entity, like a corporation, which is capable of entering into a business relationship such as a partnership. It is not. It has long been established under California law that an express trust of the type created by Presta and Tepper is merely *a relationship* by which one person or entity holds property for the benefit of some other person or entity: "A trust is any arrangement which exists whereby property is transferred with an intention that it be held and administered by the transferee (trustee) for the benefit of another . . . ." (*Eggert v. Pacific States Sav. & Loan Co.* (1943) 57 Cal.App.2d 239, 243 [136 P.2d 822], citing *Estate of Shaw* (1926) 198 Cal. 352, 360 [246 P. 48].)

This concept was more recently reiterated in *California-Nevada Annual Conf. of the United Methodist Church v. St. Luke's United Methodist Church* (2004) 121 Cal.App.4th 754, 767 [17 Cal.Rptr.3d 442]: "A trust is 'a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property

---

[4] As explained above, Tepper entered into the 1993 agreement in his capacity as trustee for "The C.A.L. Trust of 1990 u/d/t March 8, 1990," and the 1995 agreement in his capacity as trustee for "The Tepper Family Trust of 1982 u/d/t December 10, 1982."

for the benefit of another person, which arises as a result of a manifestation of an intention to create it.' (Rest.2d Trusts, § 2, p. 6.) 'A trust is created by a manifestation of intention of the settlor to create a trust, trust property, a lawful trust purpose, and an identifiable beneficiary.' (*Chang v. Redding Bank of Commerce* (1994) 29 Cal.App.4th 673, 684 [35 Cal.Rptr.2d 64].)"

The Probate Code governs the type of ordinary express trusts utilized by both Presta and Tepper in this case. Probate Code section 15200 provides several different methods of creating such a trust, including "(a) A declaration by the owner of property that the owner holds the property as trustee. [¶] (b) A transfer of property by the owner during the owner's lifetime to another person as trustee. [¶] (c) A transfer of property by the owner, by will or by other instrument taking effect upon the death of the owner, to another person as trustee."

■ Most importantly for our purposes, "an ordinary express trust *is not an entity separate from its trustees* . . . ." (*Powers v. Ashton* (1975) 45 Cal.App.3d 783, 787 [119 Cal.Rptr. 729], italics added.) "In contrast to a corporation which is a ' ". . . distinct legal entity separate from its stockholder and from its officers" [citation]' (*Merco Constr. Engineers, Inc.* v. *Municipal Court*[ (1978)] 21 Cal.3d [724,] 729 [147 Cal.Rptr. 631, 581 P.2d 636]) and deemed a person within many legal constructs (Code Civ. Proc., § 17), a '. . . trust is not a person but rather "a *fiduciary relationship with respect to property*." [Citations.] Indeed, " ' "an ordinary express trust is not an entity separate from its trustees" ' " [Citation.]' (*Moeller* v. *Superior Court* (1997) 16 Cal.4th 1124, 1132, fn. 3 [69 Cal.Rptr.2d 317, 947 P.2d 279], italics added; *Pillsbury* v. *Karmgard* (1994) 22 Cal.App.4th 743, 753 [27 Cal.Rptr.2d 491]; see also Evid. Code, § 951.)" (*Ziegler v. Nickel* (1998) 64 Cal.App.4th 545, 548 [75 Cal.Rptr.2d 312].)

It is for this reason that a trust itself can neither sue nor be sued in its own name. Instead, the real party in interest in litigation involving a trust is always the trustee. (*Powers v. Ashton, supra*, 45 Cal.App.3d at p. 787; Code Civ. Proc., § 369.)

The fact that trustees act *as individuals* when carrying out trust business is illustrated by *Nicholson v. Fazeli* (2003) 113 Cal.App.4th 1091 [6 Cal.Rptr.3d 881], a malicious prosecution case. There, the court concluded that trustees of a trust, who had filed an allegedly malicious cross-complaint against plaintiff, were not immune from liability as individuals: "Polad and Piruz Fazeli assert

that they cannot be held liable because their cross-complaint was brought solely in their capacity as trustees of the Trust. We disagree. '[T]he trustee, rather than the trust, is the real party in interest in litigation involving trust property.' (*Moeller v. Superior Court*[, *supra*,] 16 Cal.4th [at p.] 1132, fn. 3 . . . ; *Pillsbury v. Karmgard*[, *supra*,] 22 Cal.App.4th [at p.] 753 . . . .) Since the cross-complaint was 'litigation involving trust property,' the trustees, Polad and Piruz Fazeli, were parties to that litigation and therefore could be held liable for malicious prosecution of the cross-complaint. Whether the Trust must indemnify them is an issue not before us." (*Id.* at pp. 1102–1103.)

Renee nonetheless contends, in supplemental briefing filed after this court held oral argument, that California partnership law expressly allows a trust, as distinguished from its trustee, to fulfill the role of a partner. She points to Corporations Code 16101, part of the Uniform Partnership Act of 1994, which specifies that a partnership is an association of two or more "persons" and that such "persons" can include "an individual, corporation, *business trust*, estate, *trust*, partnership, limited partnership, limited liability partnership, limited liability company, association, joint venture, government, governmental subdivision, agency, or instrumentality, or any *other* legal or commercial *entity*." (Corp. Code, § 16101, subds. (9), (13), italics added.)

■ The assertion has surface appeal, and is persuasive as far as it goes, but it does not go far enough to help Renee in this case. The problem with Renee's contention is that she fails to acknowledge that (1) there are different types of "trusts" which can exist under California law (see discussion, *post*); and (2) the statute's inclusion of the phrase "or any *other* legal or commercial entity" at the end of its list of potential "persons" implies that it covers those listed only to the extent they are, in fact, "legal or commercial entities." Thus what the statute actually provides is that to the extent a "trust" qualifies as a "legal or commercial entity," it could also qualify as a "person" capable of forming a partnership. Renee's argument overlooks the diversity of California trusts.

In addition to the fiduciary trust *relationships* formed under the Probate Code (*Ziegler v. Nickel, supra*, 64 Cal.App.4th 545, 548), such as the ones utilized by Presta and Tepper in this case, there are other trust "entities" recognized under California law. For example, California recognizes "trust compan[ies]" defined in section 107 of the Financial Code as "a corporation, industrial bank, or a commercial bank that is authorized to engage in the trust business."

California law also recognizes real estate investment trusts (often referred to as "REIT"s) (Corp. Code, § 23000 et seq.), which are defined as "any unincorporated association or trust formed to engage in business and managed by, or under the direction of, one or more trustees for the benefit of the holders or owners (hereinafter in this part 'shareowners') of transferable shares of beneficial interest in the trust estate . . . and which meets one of the following two tests: [¶] (a) It received, prior to the effective date of this part, an order, permit or qualification from the Commissioner of Corporations . . . finding that it was a real estate investment trust . . . and it has for one or more of its three fiscal years immediately prior to the effective date of this part complied with, or in good faith filed a federal income tax return on the basis that it has complied with the requirements for real estate investment trusts set forth in Section 856 of the Federal Internal Revenue Code; or [¶] (b) It is formed for the purpose of engaging in business as a real estate investment trust under Part II of Subchapter M of Chapter 1 of Subtitle A of the Federal Internal Revenue Code of 1954, as amended from time to time; the sale of its shares has been qualified at any time by the Commissioner of Corporations pursuant to the Corporate Securities Law of 1968; and in good faith it has commenced business as a real estate investment trust."

The fact that some trusts, either those existing under California law or perhaps those formed pursuant to the laws of another jurisdiction, might qualify as the type of *entities* capable of forming a partnership under California law does not require us to ignore the other aspects of California law which clearly provide that the type of trusts formed by Presta and Tepper in this case do not. And in fact, Corporations Code 16601, which governs the circumstances triggering a partnership dissolution, recognizes that depending upon the nature of the trust involved in the partnership, the "partner" might be either the trust itself, or the person *"acting as a partner by virtue of being a trustee of a trust . . . ."* The type of trusts at issue in this case present the latter scenario—because the trusts themselves did not qualify as entities separate from their trustees under California law, it was Presta and Tepper who were fulfilling the partner role by virtue of their being the trustees.

Renee also relies upon *Ziegler v. Nickel, supra,* 64 Cal.App.4th 545, in support of her contention that the trusts should be construed as distinct entities. In *Ziegler,* the court concluded that a trustee who is not an attorney could not act in propria persona to represent the trust's interests in litigation. The court reasoned that it would be inappropriate for the trustee to do so, because " 'in this capacity such trustee would be representing interests of others and would therefore be engaged in the unauthorized practice of law.' " (*Id.* at

p. 548, italics omitted.) Renee apparently interprets that statement as suggesting that the "others" whose interests the trustee would be representing is the trust itself, and thus as establishing the trust's existence as separate from that of the trustee. We disagree. As the *Ziegler* court explicitly stated, the "others" whose interests the trustee would be representing in the litigation are the trust *beneficiaries*: "[a] nonattorney trustee who represents the trust in court *is representing and affecting the interests of the beneficiary* and is thus engaged in the unauthorized practice of law." (*Id.* at p. 549, italics added.)

As we have already noted in our initial citation to *Ziegler* above, the case explicitly states that " ' " ' "an ordinary express trust is not an entity separate from its trustees" ' " ' " (*Ziegler v. Nickel, supra,* 64 Cal.App.4th at p. 548); consequently, that case simply cannot be construed as providing support for the opposite position.

Finally, Renee points out, almost in passing, that trusts of the type at issue here are recognized as a distinct "persons" for tax purposes, and are required to have separate taxpayer identification numbers and be assessed separate tax liabilities from those of either their trustees or beneficiaries. But the tax status of these trusts is nothing more than a reflection of their essential purpose: to establish a special category of *property ownership* by which the property is divided between the trustee who holds record title and controls it, and those who are entitled to receive its benefits. The fact that the taxing authorities chose to create a separate category for assessing the *tax liabilities* associated with such properties suggests nothing more than a determination that *there are* tax liabilities associated with such properties—and that since neither the trustee nor the beneficiaries owns the entirety of the trust property, those liabilities cannot simply be assigned to either of those in their individual capacities. Nothing in that determination changes the nature of such trust relationships, nor conveys "entity" status upon them.

Because the trusts created by both Tepper and Presta constituted mere relationships under California law, rather than the sort of entities which might be capable of fulfilling the role of "partner" in a partnership, we have no trouble concluding that the "partners" for purposes of each agreement at issue herein had to be Tepper and Presta themselves. But our conclusion is further bolstered by the language of the partnership agreements, which suggests, in two significant respects, that Tepper and Presta also *intended* that interpretation.

First, the opening paragraph of each agreement actually does recite that *it is the men,* rather than the trusts, who are entering into the partnership relation. Stripped of extraneous verbiage, each paragraph states: "This part-

nership agreement is made and entered into . . . by and among *Ronald E. Presta . . . and Robert M. Tepper . . . .*" (Italics added.) Although both men are identified in the paragraphs as acting in the capacity of a trustee, it is nonetheless *they* who are identified *as the contracting parties.* Had the drafter wished to suggest that it was *the trusts* which were the intended "partners," then the paragraph could easily have been written along the lines of "This partnership agreement is made and entered into *by and among The Ron E. Presta Revocable Trust* u/d/t October 30, 1990, through its trustee Ronald E. Presta, *and The Tepper Family Trust* of 1982 u/d/t December 10, 1982, through its trustee Robert M. Tepper." But it was not. Consequently, the opening paragraph of each agreement clearly identifies the partners as the men, rather than the trusts.

The second language cue of significance is that in both agreements, the pronoun used in reference the partners is "his." For example, in section 5, the agreements both recite that "No Partner may withdraw all or any part of *his* capital contribution from the Partnership without express written consent of the other Partner, nor shall any Partner be entitled to receive interest on *his* capital contribution." (Italics added.) And in section 17, the agreements both specify that "the remaining Partner, at *his* own cost and expense, shall immediately cause to be prepared, filed, served and published, all such notices as may be required by law to protect the removed Partner . . . ." (Italics added.)

Nowhere in either agreement does it suggest that a partner is an "it." We recognize that the inclusion of these human pronouns might be dismissed as merely the drafter's inadvertent carryover from the language of the initial agreement entered into between Presta and Tepper as individuals; but one might also reasonably assume that if either Presta or Tepper had been serious about recasting *his trust* in the role of partner, the erroneous references would have stood out and been noted.

■ Of course, our conclusion that it is the men, rather than their respective trusts, which are the "partners" under the partnership agreements, does not in any way nullify the legal effects of Tepper and Presta's decision to enter into those partnership agreements in their capacity as trustees of those trusts. Nothing in this opinion is intended to suggest that the trusts themselves were invalid, or that either Tepper or Presta should lose whatever probate avoidance or tax advantages generally pertain when property is placed in a trust. We hold only that when a trustee of an ordinary express trust enters into a partnership relationship in his capacity as trustee, it is he, and not "the trust" which is the party to that agreement.

■ And because it was Tepper and Presta, the men, who were the partners in the agreements at issue in this case, the provision in each agreement requiring that the partnership purchase "the entire partnership interest" of a "deceased partner" was triggered by the death of Tepper.

The judgment is affirmed. Presta is to recover his costs on appeal.

O'Leary, J., and Moore, J., concurred.

A petition for a rehearing was denied November 24, 2009.