Filed 5/21/19

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION EIGHT

| | |
|---|---|
| SUNNIE H. HAN, as Special Administrator, etc., et al., | B268380 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. SC114026) |
| v. | |
| RICHARD HALLBERG, Jr., as Trustee, etc., | |
| Defendant and Appellant. | |

APPEALS from a judgment and an order of the Superior Court of Los Angeles County. Norman P. Tarle, Judge. Judgment and order reversed.

Prince & Heuer and Henry T. Heuer for Plaintiffs and Appellants.

Horvitz & Levy, Jeremy B. Rosen, Shane H. McKenzie; Law Office of Richard D. Teitel, Richard D. Teitel; Law Office of Peter A. Gelles and Peter A. Gelles for Defendant and Appellant.

————————————————

# SUMMARY

In 1975, four dentists formed a partnership to acquire and maintain a dental office building.  In 1994, the then-partners amended their agreement to allow one of the partners, Dr. Richard Hallberg, to assign his partnership interest to his living trust, and to substitute the trustee (then Dr. Hallberg) as a general partner in place of Dr. Hallberg individually.  When Dr. Hallberg died 15 years later, litigation ensued over whether, despite the substitution, Dr. Hallberg was still a partner at the time of his death, triggering certain buyout provisions that applied in the event of a partner's death.

The trial court concluded the trust was not a separate legal entity, and that Dr. Hallberg was a partner at the time of his death.  The court stated it was required to follow *Presta v. Tepper* (2009) 179 Cal.App.4th 909, 918 (*Presta*) ("when a trustee of an ordinary express trust enters into a partnership relationship in his capacity as trustee, it is he, and not 'the trust' which is the party to that agreement").

We conclude Dr. Hallberg was not a partner when he died. His trust, or the trustee of his trust, was the partner.  While a trust cannot act in its own name and must always act through its trustee, a trust is a "person" that may associate in a partnership under the Uniform Partnership Act of 1994 (UPA; Corp. Code, § 16100 et seq.), based on the plain language of the UPA's definition of "person."  The clear statutory language is reinforced by other provisions of the statute, as well as by its legislative history.  We see no contradiction between the terms of the UPA and California trust law, and to the extent *Presta* suggests otherwise, we disagree.  Accordingly, we reverse the trial court's judgment.

2

**FACTS**

**1. The Background**

In 1975, four dentists formed a general partnership called SM-Ensley Dental Group, for the purpose of "acquiring, operating and maintaining a dental office building." The 1975 partnership agreement required partners to be practicing dentists.

In 1989, the partners amended the agreement's provisions on withdrawal, retirement or death of a partner. These amendments allowed the estate of a deceased partner to retain the interest of the deceased partner and to continue operation of the partnership. This could be done by notifying the surviving partners in writing, by first-class mail, "within not more than 90 days from the date of death . . . ."[1] If the estate failed to exercise this option within 90 days, the surviving partners could opt to purchase the interest of the deceased partner by notifying the estate, "within 60 additional days," by a writing sent "by first-class mail, to the representative of the deceased partner . . . ."[2]

---

[1] The 1989 amendments stated: "In the event of the death of any partner during the term of this partnership, the operation of the partnership shall continue if the estate of the deceased partner, either by his personal representative or successor trustee, within not more than 90 days from the date of death, notifies the surviving partners in writing, by first-class mail, of the election of the estate to retain the interest of the deceased and to continue operation of the partnership on behalf of the estate or its distributees, which shall be subject to all of the obligations to the partnership of the deceased partner."

[2] The 1989 amendments stated: "In the event the personal representative or the successor trustee of the deceased partner fails to exercise such option by giving notice to the surviving partners within 90 days, as specified hereinabove, the surviving

3

The 1989 amendments also provided for the valuation of the deceased partner's interest "by the appointed California Probate Referee in any probate proceedings . . . ."[3] If the remaining partners elected not to purchase the interest of the deceased partner, the partnership assets were to be "distributed in kind to each of the partners or to their respective personal representatives or trustees according to their respective interests," and governed by the law relating to tenants in common.

In 1990, Eric L. Loberg became a partner. In 1994, the general partners were John Schrillo (26 percent), Richard W.

---

partners shall thereafter, within 60 additional days, have the option to continue the partnership business and purchase the interest of the deceased partner, which option may be exercised by said remaining partners by giving notice of the exercise of such option to the deceased partner's estate by a writing sent, by first-class mail, to the representative of the deceased partner, at a price and on the terms and conditions hereinafter set forth."

[3] The 1989 amendments stated: "In the event of the death of a partner during the term of this partnership agreement, the valuation of his interest for the purchase by the remaining partners shall be equal to the value fixed by the appointed California Probate Referee in any probate proceedings or trust termination in said deceased partner's estate as reduced by an amount equal to 7% of the gross valuation, the deceased partner's debts to the partnership and said deceased partner's share of the partnership debts. If no appointment is made within 90 days of the date of death, the remaining partners shall request the appointment of such referee as a non-probate matter, which value shall be binding upon both the heirs of the deceased partner and the remaining partners as hereinabove set forth."

Hallberg (26 percent), John F. Griffee (24 percent), and Eric L. Loberg (24 percent).

On September 12, 1994, the four partners again amended the partnership agreement, this time to allow a substitution for one of the general partners, Dr. Hallberg. The amendment recited that the partnership agreement "contain[ed] no provisions dealing with the assignment of partnership interests or the effect upon the Partnership in the event of a substitution of a general partner." The parties then agreed to the assignment of Dr. Hallberg's partnership interest to Dr. Hallberg as trustee of The Richard W. Hallberg Trust (the Hallberg Trust), as follows:

> "The assignment of RICHARD W. HALLBERG's partnership interest to RICHARD W. HALLBERG, as Trustee of THE RICHARD W. HALLBERG TRUST, shall not cause a dissolution of the partnership. Upon the consent of all general partners, RICHARD W. HALLBERG, as Trustee of THE RICHARD W. HALLBERG TRUST, shall be substituted as a general partner in place of RICHARD W. HALLBERG, individually, provided that such Trustee agrees in writing to be bound by the terms and conditions of the Partnership Agreement and that such Trustee accepts and assumes the rights, benefits, responsibilities, and liabilities of the assignor general partner."

All four general partners consented to "the substitution of RICHARD W. HALLBERG as Trustee of THE RICHARD W. HALLBERT TRUST, under Declaration of Trust dated August 4, 1994, as general partner in place of RICHARD W. HALLBERG, individually." And Dr. Hallberg, "as trustee of THE RICHARD W. HALLBERG TRUST," agreed "to be bound by the terms and

5

conditions" of the partnership agreement, and "accept[ed] and assume[d] the rights, benefits, responsibilities, and liabilities of RICHARD W. HALLBERG, individually, as a general partner in said partnership."

In 2002, Dr. Loberg acquired Dr. Griffee's 24 percent partnership interest.

In 2003, Dr. Hallberg appointed his son, Richard Hallberg Jr. (Hallberg Jr.) to serve as a cotrustee of the Hallberg Trust.

In 2009, Hallberg Jr. became the sole trustee of the Hallberg Trust. (Hallberg Jr. apparently did not realize he was the sole trustee until after the first phase of the court trial in this case.)

On March 16, 2010, Dr. Hallberg died.

If Dr. Hallberg were still a partner when he died, then the partnership agreement would give his estate 90 days (until June 14, 2010) to notify the surviving partners "of the election of the estate to retain" the deceased partner's interest and to continue operation of the partnership "on behalf of the estate or its distributees." No such notification was made, by June 14 or any later time.

On June 16, 2010, Dr. Schrillo sent Hallberg Jr. various partnership documents and information he had requested, including the partnership agreement and amendments and information on rentals, bank accounts, the mortgage, and so on, also stating that copies of the documents "should be among your father's papers."

If Dr. Hallberg were still a partner when he died, and his estate failed to exercise its option to continue the partnership, then the partnership agreement would give the surviving partners the option, within 60 additional days (until August 13,

6

2010), to continue the partnership business and purchase Dr. Hallberg's interest, by giving notice "to the deceased partner's estate by a writing sent, by first-class mail, to the representative of the deceased partner."

On August 3, 2010, counsel for Drs. Loberg and Schrillo wrote to Hallberg Jr., giving "formal notice that the surviving partners hereby exercise their option to purchase the interest of Dr. Richard Hallberg, deceased," in the partnership.

On August 17, 2010, Hallberg Jr.'s lawyer responded to the August 3, 2010 letter, referring, in pertinent part, to the 1994 amendment to the partnership agreement "relating to transfer of Dr. Hallberg's partnership interest to the Richard W. Hallberg Trust."

On August 31, 2010, Dr. Loberg and Dr. Schrillo themselves sent a "second notice" of their exercise of "[their] option to purchase the interest of Dr. Richard Hallberg, deceased," in the partnership.

On October 12, 2010, Hallberg Jr. wrote to Drs. Loberg and Schrillo, responding to their August 31, 2010 letter. Among other things, he stated the partnership interest was owned by the Hallberg Trust; and for that and other reasons, the letter was not a valid exercise "of any option you might or might not otherwise have had to purchase the Trust's Partnership Interest." Hallberg Jr. stated the Hallberg Trust was not obligated to sell its partnership interest, "and that instead, pursuant to [the] Partnership Agreement, the Partnership property is required to be distributed to the remaining valid Partners, as tenants in common."

## 2. The Complaint

On September 6, 2011, Drs. Loberg and Schrillo (plaintiffs) filed a complaint against Hallberg Jr. as successor trustee of the Hallberg Trust (defendant).[4] The complaint recited that, after exhaustive discussions, the parties were unable to agree on terms, including the price, "to buy-out the interest of the Hallberg Trust." The complaint sought appointment of a probate referee for evaluation of the interest of the Hallberg Trust in the partnership; a mandatory injunction requiring defendant to comply with the buyout terms of the partnership agreement; and declaratory relief. A fourth cause of action sought damages for defendant's alleged breach of the partnership agreement.

## 3. The Trial

On July 9 and 10, 2012, the court held a bench trial on the three bifurcated equitable claims, and issued a tentative decision in October 2012. We briefly summarize the proceedings pertinent to our resolution of this appeal.

The court held that the Hallberg Trust was not "a separate legal entity that continues to own a partnership interest," and "[t]he partner in this case was Dr. Hallberg." The court observed that defendant's effort to distinguish the *Presta* case was "valiant but unavailing," and that the court was required to follow *Presta*.

The court ordered the matter to proceed to the appointment of a referee for valuation of the deceased partner's interest.

In November 2012, defendant sought reconsideration or a new trial, principally because he had discovered that the

---

[4] During this litigation both plaintiffs died, and Sunnie H. Han, as special administrator of the estate of Dr. Loberg, and Dr. Schrillo's wife, Kathryn Schrillo, as special administrator of his estate, were substituted as plaintiffs.

Hallberg Trust had been restated in 2009 and that he was, at the time of his father's death, the sole trustee. He contended his father therefore was not the holder of the partnership interest, either as an individual or as trustee, on the date of his death.

The court permitted defendant to provide additional trial testimony and evidence, and allowed further briefing by the parties. These proceedings occurred in June and July 2013.

In a supplemental tentative decision in July 2013, the court adhered to its previous ruling for the plaintiffs. The court viewed the 1994 amendment "against [the] background" that all the partners had been dentists and close friends, not legal professionals, and "the only reference to a trustee in any of the partnership documents . . . is the 1994 amendment."[5] The court stated it "appears clear that based upon their familiarity and mutual trust," and "[w]hen read in the context of the full agreement and the relationship of the partners, it would appear that the individual partners expected to have some control over which person they would be dealing with in managing the partnership."

The court also found that Dr. Loberg's testimony "which the defense brushes aside as self-serving," also corroborated the court's interpretation. (Dr. Loberg testified " 'that this was a method for Dr. Hallberg to avoid probate and some taxes.' " The

---

[5] The court observed there were two references to trustees in the 1989 amendment, but these "presumably refer[red] to testamentary trustees."

9

court found this testimony "conforms to this general sense of the 1994 amendment, but also is in line with the *Presta* holding.")[6]

Litigation then continued over the appointment of a referee and the appraisal of "the 'Hallberg 26% Interest' " in the partnership. In February 2014, the court appointed a referee and required the referee to value the real property "as a Dental Office Building in accord with the purpose of the partnership . . . and the historical use of the building, rather than its 'highest and best use.' "

Five months later (during which there was further litigation over communication with the referee and the information he could consider), the referee valued the fee simple interest in the real estate, as of July 27, 2014, at $3.7 million. More litigation followed, with defendant objecting to the referee's report. In February 2015, the trial court stated its agreement with the referee's recommended valuation, and its intention to permit the parties to raise issues still to be resolved that were not part of the referee's valuation.

In a second phase of the trial that took place in May 2015, the court found no breach of contract, observing that defendant was not a partner or signatory to the partnership agreement, which did not require defendant's agreement for the appointment

---

[6] Dr. Loberg also testified that he never contemplated "at any time up until today [June 19, 2013] that [he] would under some circumstance be partners with somebody that's a non dentist with respect to the building." (This cannot be so, because as of 1989, the partnership agreement itself contemplated that the estate of a deceased partner could retain the partnership interest of a deceased partner.)

10

of a probate referee. The court found the buyout amount owed to defendant was $723,366.[7]

Judgment was entered on October 7, 2015.

Defendant filed an appeal and plaintiffs filed a cross-appeal.

In postjudgment proceedings, the court awarded certain attorney fees and costs in favor of plaintiffs. Defendant filed an appeal from the trial court's order, and plaintiffs filed a cross-appeal.

We ordered the appeals from the judgment and the postjudgment order consolidated into a single appeal.

## DISCUSSION

### 1. Appellate Motions

Defendant filed a motion for judicial notice along with his opening brief. He requested judicial notice of legislative history materials relating to the UPA, and of complaints in two lawsuits relating to the partnership filed in 2001 and 2012. We grant the motion as to the legislative history materials,[8] and deny it as to the complaints; the latter are irrelevant to our decision.

---

[7] The buyout amount consisted of 26 percent of the referee's property valuation of $3.7 million, reduced by 7 percent as required by the partnership agreement, and further reduced by $171,294 in debts (for the mortgage, loans from partners, and certain disputed expenses for improvements to the building).

[8] Plaintiffs opposed defendant's request for judicial notice, contending the materials are irrelevant to the issues on appeal; the request did not state whether judicial notice was taken by the trial court; courts generally do not take judicial notice of evidence not presented to the trial court; and the materials "would require an undue expenditure of time for review." A reviewing court has

11

Plaintiffs filed a motion to strike portions of defendant's appendix, contending the appendix includes five documents that were not filed, admitted, marked for identification, or lodged with the trial court. These include four inconsequential documents that plaintiffs themselves state were contained in the exhibit books defendant and plaintiffs brought to trial (two in defendant's exhibit book and two in plaintiffs' exhibit book). The fifth document plaintiffs want to strike is referee Keith Settle's 2014 appraisal – over which the parties litigated for months, and which is the basis for the buyout amount ordered in the judgment on appeal. We find plaintiffs' motion baffling and pointless, and no legal authority requires us to grant it. We accordingly deny it, and turn to the merits of the appeals.

## 2. Defendant's Appeal

Defendant raises four claims of error on appeal. Because our conclusion on the first claim is dispositive, we do not consider defendant's other challenges to the judgment and postjudgment order.

As indicated at the outset, we cannot agree with the trial court's ruling, stated in the judgment, that "[a]t the time of his death, Richard Hallberg, Sr., was one of three partners in the SM-Ensley Dental Group partnership, and he held a 26% interest in the partnership." On the contrary, we find it incontrovertible that Dr. Hallberg individually was *not* a partner when he died. That much is clear from the express terms of the 1994 amendment to the partnership agreement. The four then-

_____

the authority to take judicial notice of matters not before the trial court (*Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325), and plaintiffs' proffered reasons for not doing so are not persuasive.

12

partners expressly consented to "the substitution of [Dr. Hallberg] *as Trustee* of [the Hallberg Trust] as general partner *in place of [Dr. Hallberg] individually*." (Italics added.) And Dr. Hallberg, "as trustee of [the Hallberg Trust]," agreed to be bound by the terms of the partnership agreement and assumed "the rights, benefits, responsibilities, and liabilities" of Dr. Hallberg individually "as a general partner."

We cannot ignore the express substitution of Dr. Hallberg as trustee "in place of [Dr. Hallberg] individually." The holder of the partnership interest, for the 15 years before and at the time of Dr. Hallberg's death, was the trustee of the Hallberg Trust – not Dr. Hallberg individually. That did not change when Dr. Hallberg died. The whole point of the assignment of Dr. Hallberg's partnership interest to the trust was to avoid having the partnership interest pass to Dr. Hallberg's estate when he died. Accordingly, we will not pretend the substitution of general partners in 1994 did not happen.

That brings us to the legal point at issue: the claim that, because an express trust under California law is not "an entity separate from its trustee[]," a trust like the Hallberg Trust is not a "person" that can participate in a partnership. We do not agree. California's UPA plainly contemplates the opposite result, and we do not find *Presta*'s contrary assessment persuasive.

Our analysis begins with the UPA and general trust principles, followed by an explanation of our differences with *Presta* and the arguments raised by plaintiffs.

a.      **Trust principles and the UPA**

Case precedents have long stated that under California law, "a trust is not a person but rather 'a fiduciary *relationship* with respect to property,' " and " ' " 'an ordinary express trust is

13

not an entity separate from its trustees.' " ' " (*Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1132, fn. 3 (*Moeller*).) Thus, for example, a trust cannot sue or be sued or otherwise act in its own name; instead the trustee acts on behalf of the trust. (E.g., *Powers v. Ashton* (1975) 45 Cal.App.3d 783, 787.) Similarly, an estate is not considered a traditional legal entity. (See *Estate of Bright v. Western Air Lines, Inc.* (1951) 104 Cal.App.2d 827, 828 ["An 'estate' is not a legal entity and is neither a natural nor artificial person."].)

But the fact that a trust is a "relationship" and not an entity separate from its trustees does not mean that a trust cannot act – as always, through its trustee – as a partner under general partnership law. California's UPA expressly provides that a trust may associate in a partnership.

Under the UPA, a partnership is "an association of two or more persons," and the term "person" is defined to include a "trust." (Corp. Code, § 16101, subds. (9) & (13).) Specifically, the UPA defines a person as "an individual, corporation, business trust, estate, trust, partnership, limited partnership, limited liability partnership, limited liability company, association, joint venture, government, governmental subdivision, agency, or instrumentality, or any other legal or commercial entity." (*Id.,* subd. (13).) Thus, the statute on its face includes both a "business trust" and a "trust" among the "person[s]" that may associate in a partnership.[9]

---

[9] In practice, family trusts do form partnerships. While no legal challenge was at issue, there are references in California cases to living trusts acting as partners in California partnerships. (See, e.g., *Stoltenberg v. Newman* (2009) 179 Cal.App.4th 287, 290, 293 [referring to a family trust that

14

The plain definitional language of the UPA is, in our view controlling. And other provisions of the UPA – specifically the provisions identifying the events that dissociate a partner from the partnership (Corp. Code, § 16601) – further show that the statute contemplates no termination of partnership status when the trustee of a trust is replaced or dies.

Section 16601 of the UPA states that a partner is dissociated from a partnership "upon the occurrence of any of the following events." (Corp. Code, § 16601.) Those include, "[i]n the case of a partner who is an individual," the partner's death. (*Id.*, subd. (7)(A).) And, "[i]n the case of a partner that is a trust or is acting as a partner by virtue of being a trustee of a trust," a partner is dissociated by "distribution of the trust's entire transferable interest in the partnership, but *not* merely by reason of the substitution of a successor trustee." (*Id.*, subd. (8), italics added.) (The same is true of a partner that is "an estate or is acting as a partner by virtue of being a personal representative of an estate." An estate is dissociated from a partnership by "distribution of the estate's entire transferable interest in the partnership, but not merely by reason of the substitution of a successor personal representative." (*Id.*, subd. (9).))

### b. Legislative history of the UPA

As we have said, we view the plain language of California's UPA as controlling. And we find nothing in the legislative history materials defendant has presented that suggests any contrary interpretation of that language.

The basis of California's statute was a revised uniform partnership act (RUPA or the model act), first approved and

was a general partner in two entities, and to "the partnerships owned by" an inter vivos family trust].)

15

recommended for adoption in all states by the National Conference of Commissioners on Uniform State Laws (the Conference) in 1992, and again, with revisions, in 1994. The Conference's comments on the definition of " 'person,' " in 1992 and again in 1994, stated that the definition was "the usual definition used by the . . . Conference."[10] As for the 1994 model act's provisions on events that dissociate a partner from the partnership (substantively identical to those later adopted in California), the Conference simply described the provision[11] and stated that it was "new" and was "inspired by" a provision of the Revised Uniform Limited Partnership Act.

In 1996, the California Legislature enacted the Conference's 1994 model act, with modifications not pertinent here. (9 Witkin, Summary of Cal. Law (11th ed. 2017) Partnership, § 18, pp. 606-607.) The California legislative history contains little relevant discussion of the definition of "person." The Legislature merely added other entities – limited

---

[10] The definition of "person" was "an individual, corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision, agency, or instrumentality, or any other legal or commercial entity." The Conference also stated in its 1992 comments that "[a] limited liability company is another legal entity within the definition of 'person,' " and in its 1994 comments that the definition "includes other legal or commercial entities such as limited liability companies."

[11] The Conference stated the statute "provides for the dissociation of a partner that is a trust, or is acting as a partner by virtue of being a trustee of a trust, upon the distribution by the trust of its entire transferable interest in the partnership, but not merely upon the substitution of a successor trustee."

16

partnerships, limited liability partnerships, and limited liability companies – to the 1994 model act's definition of "person." Similarly, the Legislature adopted without substantive change the 1994 model act's provision on the event that dissociates a trust, or a trustee "acting as a partner by virtue of being a trustee of a trust," from the partnership. (Corp. Code, § 16601, subd. (8).) That provision was in the bill as introduced (Assem. Bill No. 583 (1995-1996 Reg. Sess.) Feb. 17, 1995, § 2, p. 23) and remained unchanged.

In short, there appears to have been no controversy over the inclusion of a trust among persons who may form a partnership – either when the Conference approved the model act or during the passage of the UPA by the California Legislature.

### c. *Presta*

Despite the plain language of the 1994 amendment to the partnership agreement in this case, and the language and legislative history of the UPA (which plaintiffs do not address), plaintiffs rely on the *Presta* case to conclude that Dr. Hallberg was a partner when he died. We are not persuaded.

In *Presta*, two men entered into a real estate investment partnership, each acting in his capacity as trustee of a family trust. The court held that the partners were "the men," not "the trusts," and the death of one of the two men triggered the provision of the partnership agreement requiring the partnership to purchase the interest of a deceased partner. (*Presta, supra,* 179 Cal.App.4th at pp. 911, 919.)

*Presta*'s rationale was that under California law, a trust is not "an entity, like a corporation, which is capable of entering into a business relationship such as a partnership." (*Presta, supra,* 179 Cal.App.4th at p. 913.) An express trust "is merely a

17

*relationship* by which one person or entity holds property for the benefit of some other person or entity." (*Ibid.*)  The court found it "most important[]" that an express trust is not an entity separate from its trustees (*id.* at p. 914), citing *Moeller, supra,* 16 Cal.4th at page 1132, footnote 3 ("a trust is not a person but rather 'a fiduciary *relationship* with respect to property,' " and " ' " 'is not an entity separate from its trustees' " ' ").

Of course, we do not disagree with the principles expressed in *Moeller*.  But we do not see how the fact that a trust is not " 'an entity separate from its trustees' " precludes the trustee from "entering into a business relationship such as a partnership" (*Presta, supra,* 179 Cal.App.4th at pp. 914, 913) on behalf of the trust.  As *Moeller* itself states, "the trustee has all the powers needed for effective transaction of business on behalf of the trust." (*Moeller, supra,* 16 Cal.4th at p. 1132.)

*Presta* acknowledges that the UPA specifies that "persons" who may form a partnership include both a "business trust" and a "trust." (*Presta, supra,* 179 Cal.App.4th at p. 915.)  But *Presta* points out that the UPA's definition of "person" ends by including " 'any *other* legal or commercial entity.' " (*Presta,* at p. 915, quoting Corp. Code, § 16101, subd. (13), italics added in *Presta*.)  According to *Presta,* this "implies that it covers those listed only to the extent they are, in fact, 'legal or commercial entities.' " (*Presta,* at 915.)  "Thus what the statute actually provides is that to the extent a 'trust' qualifies as a 'legal or commercial entity,' it could also qualify as a 'person' capable of forming a partnership." (*Ibid.*)

We do not see any such implication in the terms of the statute.  For one thing, it cannot be reconciled with the inclusion of "estate[s]" in the definition of persons that may associate as

18

partners. Nor does it explain the inclusion of both "business trust[s]" *and* "trust[s]." *Presta* identifies " 'trust compan[ies]' " and "real estate investment trusts" as "trust 'entities' recognized under California law,"[12] that "might qualify as the type of *entities* capable of forming a partnership," while family trusts are merely "fiduciary trust *relationships*" which do not. (*Presta, supra,* 179 Cal.App.4th at pp. 915-916.) But again, we see nothing in trust or partnership law that supports the constraint *Presta* imposes.

In the end, *Presta* distinguishes between a partner that is "the trust itself" and a partner that is " 'acting as a partner by virtue of being a trustee of a trust.' " (*Presta, supra,* 179 Cal.App.4th at p. 916, quoting Corp. Code, § 16601, subd. (8).) *Presta* treats the former as a category available only to "entities" like trust companies and real estate investment trusts, and treats the latter (in our view, erroneously) as if they were individual partners rather than trustees. (*Ibid.*) *Presta* asserts that section 16601 of the UPA recognizes the distinction (*Presta,* at p. 916), because it contains the language referring to a partner "that is a trust *or* is acting as a partner by virtue of being a trustee of a trust." (§ 16601, subd. (8), italics added.)

But *Presta*, quoting the applicable language only in part, completely ignores the whole point of Corporations Code section 16601, which is to identify events that dissociate the partner from the partnership. Whether the partner is "a trust" or "is acting as a partner by virtue of being a trustee of a trust," makes no discernable difference; in both cases, the partner is *not*

---

[12] The definition of "trust compan[ies]" to which *Presta* refers was later repealed. (See Fin. Code, former § 107, repealed Stats. 2011, ch. 243, § 1.)

19

dissociated from the partnership by the death of the trustee. On the contrary, that partner, whether trust or trustee, is dissociated only by "distribution of the trust's entire transferable interest in the partnership," and *not* by "the substitution of a successor trustee." (§ 16601, subd. (8).)

In other words, it does not matter whether we identify the partner as the trust or as the trustee that transacts business for the trust. The result is the same. And *Presta* identifies nothing in California trust law to suggest that, merely because a trust is not a separate entity and cannot act except through its trustee, it (or its trustee acting for it) cannot be a partner. We can think of no reason why that should be so.

We end our discussion of *Presta* by pointing out that the court there was faced with facts that differ to some extent from the facts in this case. The court concluded that the partners "had to be [the men] themselves" because the family trusts they created "constituted mere relationships under California law." (*Presta, supra,* 179 Cal.App.4th at p. 917.) But the court found its conclusion was "further bolstered" by language in the partnership agreement that suggested that the two men, who were the sole trustees of their respective trusts, "also *intended* that interpretation." (*Ibid.*; see *id.* at pp. 917-918.) Nothing of the sort exists in this case. Instead, the 1994 amendment leaves no doubt the four partners intended to substitute Dr. Hallberg as trustee of his trust in place of Dr. Hallberg in his individual capacity. They consented in writing to the substitution, and the amendment required Dr. Hallberg as trustee to accept and assume the responsibilities of Dr. Hallberg individually "as a general partner in said partnership." There is no suggestion in the partnership agreement to the contrary.

### d. Plaintiffs' contentions

Plaintiffs contend that, "[s]eparate and apart from the reasoning in *Presta,*" additional facts in this case "militate in favor of the same outcome." They do not.

Plaintiffs first argue that the 1994 amendment was intended "to cover the single transaction of Dr. Hallberg's transfer to his revocable, family trust, and to no other," and there was no agreement to "multiple transfers and to include strangers." Similarly, plaintiffs contend the partners "did not give consent to any other person or entity to substitute in as a partner." We understand plaintiffs to be telling us they did not agree to "transfers" to successor trustees such as defendant. While the argument suggests the partners did not understand trust principles when they agreed to the substitution of Dr. Hallberg as trustee of the Hallberg Trust for Dr. Hallberg individually, that cannot change the legal effect of their agreement. (*Moeller, supra,* 6 Cal.4th at p. 1131 ["The powers of a trustee are not personal to any particular trustee but, rather, are inherent in the office of trustee. It has been the law in California for over a century that a new trustee 'succeed[s] to *all* the rights, duties, and responsibilities of his predecessors.' "].)

Plaintiffs point to the trial court's conclusion that, "based upon their familiarity and mutual trust, the partners expected to control the membership of the partnership." It is hard to know what to make of that, because as discussed earlier, long before the 1994 amendment, the partners had agreed that the estates of deceased partners could retain the deceased partner's interest in the partnership. The beneficiaries of a deceased partner's estate are no less "strangers" than a successor trustee upon the death of the original trustee. So, plaintiffs' suggestion that the partners

21

did not intend to allow a successor trustee to remain in the partnership simply does not withstand scrutiny.

Plaintiffs then argue that the 1994 amendment was ambiguous, and that Dr. Loberg testified to his understanding that the trust was a method " 'for Dr. Hallberg to avoid probate and some taxes,' " and that he (Dr. Loberg) never contemplated that he would be partners with a non-dentist.  But as we have stated earlier, there is nothing ambiguous about the 1994 amendment, and Dr. Loberg's subjective understanding (which is also contrary to the 1989 amendment) cannot change that. (*Roldan v. Callahan & Blaine* (2013) 219 Cal.App.4th 87, 93 ["courts must also presume parties understood the agreements they sign, and that the parties intended whatever the agreement objectively provides, whether or not they subjectively did"].)

In short, none of these "additional facts" requires or allows a different outcome.

### e.     **Conclusion**

To summarize:  It is quite clear from the language of the 1994 amendment that Dr. Hallberg individually was not a partner when he died.  There is simply no way to get around this point.  It is also quite clear from the language of the UPA that a trust, as well as a business trust and an estate, is a person that may associate with other persons in a partnership.  There is no way to get around that either.  And it is quite clear from the UPA that the appointment of a successor trustee does not dissociate a partner that is a trust (or is acting as a partner by virtue of being a trustee of a trust) from the partnership.  To the extent that *Presta* suggests otherwise, we are compelled to disagree.

As a consequence of these points, it is necessarily the case that, because Dr. Hallberg individually was not a partner when

he died, his death did not require his estate to make an election to retain his interest, as that interest had long ago been assigned to the trustee of the Hallberg Trust, and did not pass to Dr. Hallberg's estate.  The Hallberg Trust, or its trustee acting as a partner by virtue of being the trustee, continues to be a partner in the SM-Ensley Dental Group along with the estates of Dr. Schrillo and Dr. Loberg.

**2.     Plaintiffs' Cross-appeal**

In their cross-appeal, plaintiffs contend the trial court should have used the date of Dr. Hallberg's death as the date of valuation of his partnership interest; that the court erred when it did not award attorney fees to plaintiffs as prevailing parties under Civil Code section 1717; and that certain distributions of net income to defendant after Dr. Hallberg's death should have been deducted from the buyout price.  These claims are all moot in light of our ruling on defendant's appeal.

### DISPOSITION

The judgment and postjudgment order are reversed, and the trial court is directed to enter judgment in favor of defendant. Defendant is to recover his costs on appeal.


GRIMES, Acting P. J.


WE CONCUR:


STRATTON, J.


WILEY, J.


23